UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS F. COOLEY,
Plaintiff

VS. C. A. NO. 04-338 S

CORNELL CORRECTIONS DONALD
W. WYATT, D.F. USA, ECT, ET AL,
Defendants

**CORNELL CORRECTIONS OF RHODE ISLAND, INC.'S AND CORNELL COMPANIES, INC.'S (wrongfully designated as CORNELL CORRECTIONS DONALD W. WYATT OR CORNELL CORRECTIONS, U.S.A.) MOTION FOR SUMMARY JUDGMENT**

Cornell Corrections of Rhode Island, Inc. (hereinafter "Cornell of RI") and Cornell Companies, Inc. (hereinafter "Cornell Companies"), wrongfully designated in Plaintiff's Complaint as "Cornell Corrections Donald W. Wyatt" or "Cornell Corrections, U.S.A.", hereby move pursuant to Fed. R. Civ. P. 56(c) for summary judgment on all of Plaintiff's claims against them. As grounds, Cornell of RI and Cornell Companies rely upon and incorporate by reference the memorandum of law filed herewith.

**WHEREFORE**, Cornell Corrections of Rhode Island, Inc. and Cornell Companies,

Inc.'s motion should be granted, and this Court should enter summary judgment in their favor.

Respectfully Submitted,
Cornell Corrections of Rhode Island, Inc. and
Cornell Companies, Inc.,
By their attorneys,

Dennis T. Grieco, II #5037
GIDLEY, SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644 - Fax: 331-9304

**CERTIFICATION**

Thomas F. Cooley, Pro Se
I.D. W84908
Old Colony Correctional Center
1 Administration Rd.
Bridgewater, MA 02324

I hereby certify that on the 3th day of November 2005, a true and accurate copy of the within was served upon the above-named plaintiff.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS F. COOLEY,
Plaintiff

VS. C. A. NO. 04-338 S

CORNELL CORRECTIONS DONALD W. WYATT, D.F. USA, ECT, ET AL,
Defendants

**MEMORANDUM IN SUPPORT OF CORNELL CORRECTIONS OF RHODE ISLAND, INC.'S AND CORNELL COMPANIES, INC.'S (wrongfully designated as CORNELL CORRECTIONS DONALD W. WYATT OR CORNELL CORRECTIONS, U.S.A.) MOTION FOR SUMMARY JUDGMENT**

Cornell Corrections of Rhode Island, Inc. ("Cornell of RI") and Cornell Companies, Inc. ("Cornell Companies") (collectively "the Cornell corporations") are entitled to summary judgment as to all of the Plaintiff's claims in this action. The Plaintiff's constitutional claims, even if properly asserted against the corporate entity that operates the Donald W. Wyatt Detention Facility, are not actionable. The Plaintiff cannot assert a Bivens claim or a claim under 42 U.S.C. § 1983 against the Cornell corporations, as they were not acting under color of state or federal law. Furthermore, the Plaintiff cannot assert a Bivens claim against a private corporation, and the Plaintiff has failed to identify a corporate policy or custody giving rise to a claim under § 1983. Moreover, Cornell Companies cannot be held liable as a parent corporation for any wrongdoing on the part of Cornell of RI.

In addition, Plaintiff fails to state a cognizable claim against any entity which could be subject to suit. "Cornell Corrections Donald W. Wyatt" and "Cornell Corrections, U.S.A." are not legal entities against which suit can be brought. The Plaintiff's claims against them are therefore *void ab initio*. Finally, the Plaintiff failed to effect sufficient and timely service of

process upon either Cornell of RI or Cornell Companies. The summons served by the Plaintiff was deficient because it was directed to "Cornell Corrections, Inc," which is not a legal entity, and the summons therefore did not constitute sufficient process upon either Cornell Companies or Cornell of RI. Moreover, the Plaintiff failed to effect timely service of process upon Cornell Companies because the summons was served upon Warden Wayne Salisbury at the Donald W. Wyatt Detention Facility, who is not an authorized agent for service of process upon Cornell Companies. Accordingly, this Court should grant summary judgment in favor of Cornell of RI and Cornell Companies.

## BACKGROUND

Plaintiff filed his complaint in this Court on or about August 9, 2004. Plaintiff, Thomas F. Cooley was an inmate lawfully confined to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island ("Wyatt"). The Plaintiff's complaint alleges injuries resulting from events occurring between April and August of 2002, during the course of his incarceration at the Wyatt Detention Facility. (Plaintiff's Complaint with Civil Cover Sheet, see attachments labeled Complaints # 1-4.) He asserts four claims arising out of the following allegations: that a nurse at the Wyatt Detention Facility improperly disclosed medical information pertaining to him to a correctional officer; that he was provided with a tube of toothpaste which he alleges was somehow contaminated; that he was assaulted by correctional officers when he was forcibly extracted from his cell due to his flooding of the cell and kicking of the cell door; and that he was assaulted by another inmate for over one minute without receiving aid from the attending correctional officers. (Complaint ¶ IV and attachments labeled Complaints # 1-4.) As a result of the incidents alleged in the complaint, Plaintiff alleges permanent physical injuries, as well as psychological harm and injury. Id.

The Plaintiff's Complaint designates as named defendants "Cornell Corrections Donald W. Wyatt" and "Cornell Corrections, U.S.A." (Complaint ¶ III.) The Plaintiff caused a summons to be served at the Wyatt Facility which designated "Cornell Corrections, Inc." as the named defendant. (See Process Receipt and Return with attached Summons, attached hereto as **Exhibit A.**) No such legal entities by any of those names exist. (See Affidavit of Wayne Salisbury, attached hereto as **Exhibit B** ¶ 8.) Cornell Corrections of Rhode Island, Inc. operates the Wyatt Facility pursuant to contractual arrangements involving the United States Marshals Service and the facility's owner, the Central Falls Detention Facility Corporation. See Sarro v. Cornell Corrections, Inc., 248 F. supp. 2d 52, 55 (D.R.I. 2003) (citing Huguenin v. Ponte, 29 F. supp. 2d 57, 60 (D.R.I. 1998)). Cornell Corrections of Rhode Island, Inc. is a wholly owned subsidiary of Cornell Companies, Inc. (See **Exhibit B**, Affidavit of Wayne Salisbury ¶ 3.) Cornell Companies, Inc. was known as Cornell Corrections, Inc. prior to 2000 when it officially changed its name to Cornell Companies, Inc. Id. at ¶ 4; see Sarro, 248 F. Supp. 2d at 55, n. 1. Thus, both the summons and Complaint served in this action failed to designate the proper name of a legal entity against which recovery may be had.

The Plaintiff's failure to name and serve a proper party defendant is peculiar in light of the fact that in a prior lawsuit he filed in this Court, naming Cornell Corrections, U.S.A., he was apprised of the fact that the legal and proper name of the Cornell parent company is Cornell Companies, Inc. (See Memorandum of Cornell of RI and Cornell Companies in Support of Objection to Plaintiff's Request for Entry of Default, at attachment labeled Exhibit C, Objection to Plaintiff's Request for Default in Thomas Cooley v. John H. Thomas, et al, C.A. No. 03-213ML (D.R.I. 2003).) Despite that direct knowledge, the Plaintiff again failed to properly name Cornell Companies, Inc. as a defendant and instead, chose to again name a party defendant that he knew was improper.

The Plaintiff states in his complaint no law or legal authority as support for his alleged right to recovery for any of these claims. (See Complaint with Civil Cover Sheet.) The Plaintiff has, however, repeatedly identified 42 U.S.C. § 1983 as the basis for this cause of action. Id. at Civil Cover Sheet ¶ VI and Certificates of Service.

## ARGUMENT

### I. STANDARD OF REVIEW

"Summary judgment should be granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Scully Signal Company v. Joyal, 881 F. Supp. 727, 738 (D.R.I. 1995) (citing Fed. R. Civ. P. 56(c)) (other citations omitted). To overcome a motion for summary judgment under Rule 56(c), the nonmoving party must present facts that show that there is a genuine issue for trial. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "[T]he evidence presented by the nonmoving party cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Id. (internal quotation omitted).

It is well established that even a *pro se* inmate's claims must be comprised of more than speculation, conjecture, or conclusory allegations. Hurney v. Carver, 602 F.2d 993, 995 (1st Cir. 1979). A *pro se* plaintiff's allegations "must be backed up with enough supportive facts to outline the elements of a pleader's claims [and] . . . courts need not conjure up unpleaded facts to support conclusory [allegations]." Id. at 995. "The pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990).

## II. THIS COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CORNELL OF RI AND CORNELL COMPANIES BECAUSE THE PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE NOT ACTIONABLE

### A. THE PLAINTIFF CANNOT MAINTAIN AN ACTION UNDER *BIVENS* OR § 1983 BECAUSE THE CORNELL CORPORATIONS DID NOT ACT UNDER COLOR OF FEDERAL OR STATE LAW FOR PURPOSES OF CONSTITUTIONAL LIABILITY

The Plaintiff failed to identify in his complaint the specific law or legal authority under which he claims a right to recovery for his alleged injuries. (See Complaint.) However, the Plaintiff identified on his Civil Cover Sheet and Certificates of Service attached to the Complaint that the present action is a civil rights suit under 42 U.S.C. § 1983, id., inferring that the individuals that the Plaintiff alleges violated his civil rights were acting under color of state law. However, the specific allegations of the Plaintiff's complaint indicate that those individuals were acting under authority of federal law and therefore, the Plaintiff is asserting claims pursuant to the United States Supreme Court decision in Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The Plaintiff, however, cannot prevail on his constitutional claims, because the Cornell corporations did not act under color of federal or state law.

Constitutional liability does not automatically attach to a private party performing a governmental function. In fact, the only time liability attaches to a private party performing a governmental function is when "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (emphasis added). In Richardson v. McKnight, 521 U.S. 399, 413 (1997), the United States Supreme Court held "that private prison guards, unlike those who work for the government, do not enjoy immunity from suit in a § 1983 case," but expressly left undecided the issue of whether

those private employees "actually acted 'under color of state law.'"[1] Instead, the Richardson Court held that the "under color of law" determination must be made pursuant to its analysis in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Therefore, the Lugar analysis is determinative of whether the in this case the Cornell corporations acted under color of state or federal law, and not the mere fact that they operate a correctional facility.[2]

The Cornell corporations cannot be considered governmental actors under the analysis articulated in Lugar. In Lugar, the Supreme Court set forth a two-part analysis. First, the deprivation must be caused by the exercise of a right or privilege created by the government or by a rule of conduct imposed by the government or by a person for whom the government is responsible. Lugar, 457 U.S. at 936. Second, the party charged with the deprivation must be a person who may fairly be said to be a government actor, because he is in fact a government official, because he has acted together with, or has obtained significant aid from, government officials or because his conduct is otherwise chargeable to the government. Id. Where the conduct of a private party alleged to violate a constitutional right cannot be ascribed to a decision by a governmental entity, the conduct cannot be considered governmental action in satisfaction of the first part of this analysis. Id. at 937-38 (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 177 (1972)). Plaintiff fails to demonstrate how any of the alleged conduct giving rise to his claims is a result of any decision by a governmental entity. Accordingly, the alleged

---

1 No Bivens claims were asserted in Richardson v. McKnight.

2 The standards applicable to determining action under color of state law for § 1983 liability are interchangeable with those applicable to determining action under color of federal law for Bivens liability. See Morast v. Lance, 807 F.2d 926, 931 (11th Cir. 1987) ("Because the concept of action under color of federal law for purposes of a Bivens action is almost identical to the doctrine of action under color of state law for purposes of a § 1983 action, we will apply the concepts of state action to [plaintiff's] claim[s]."); Kitchens v. Bowen, 825 F.2d 1337, 1340 (9th Cir. 1987)("[T]he standards utilized to find federal action . . . are identical to those employed to detect state action.")(citation and quotation marks omitted).

unconstitutional conduct is not attributable to the federal or state government and does not provide a basis for Plaintiff's constitutional claims against Cornell of RI and Cornell Companies.

As for the second prong of the Lugar analysis, three tests or standards have been enunciated for determining whether private conduct is properly chargeable to the government: the "public functions test," the "symbiotic relationship test," and the "nexus" test. Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-99 (1st Cir. 1990). The Defendants are not governmental actors under any of these tests.

**a. Public Functions Test**

When analyzing the public functions test, the Supreme Court has explained that:

> [O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a [public function.] We have held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.

Rodriguez-Garcia v. Davila, 904 F.2d at 98 (quoting Rendall-Baker v. Kohn, 457 U.S. 830, 842 (1982))(emphasis in original). The United States Supreme Court has expressly stated that "correctional functions have never been exclusively public . . . ." Richardson v. McKnight, 521 U.S. at 405 (emphasis added). The Supreme Court in Richardson v. McKnight went on to explain that private contractors have been heavily involved in prison management throughout our nation's history. Id. at 405-06. Consequently, Cornell of RI and Cornell Companies have not been performing a traditional public function exclusively reserved to the government. Therefore, the delegation of the task of prison management to a private party does not satisfy the "public functions test" because the requisite "exclusivity" element is lacking.

Admittedly, only the government has the power to sentence a person to a term of imprisonment and that authority cannot be delegated to private parties. But, the actual duty of running a correctional facility to keep that same person incarcerated can be delegated to private parties and has been since the 18th century. Richardson v. McKnight, 521 U.S. at 405. Thus, the discretionary function of sentencing a person to prison is significantly different than the

ministerial function of operating a correctional facility and only the latter may be delegated to private parties. Therefore, the delegation of prison management tasks -- providing inmates with food, shelter, and medical attention while maintaining order -- does not metamorphose private prison employees into governmental officials.

In fact, the ministerial function of operating a correctional facility is no more a governmental function than is a storekeeper detaining a customer for suspicion of shoplifting. Pursuant to R.I. Gen. Laws § 11-41-21, merchants are empowered to detain citizens suspected of shoplifting. This statutory authority does not convert private merchants into state actors for purposes of constitutional liability. Suspected shoplifters who sue merchants for violating their rights must do so under state common-law principles, not pursuant to 42 U.S.C. § 1983.

**b. Nexus Test**

Under the nexus test, "the provision of services to a [governmental] entity does not establish [governmental] control, even where, as here, the private contractor's sole business is the performance of public contracts." Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-97 (1st Cir. 1990). The test requires that "'the challenged action of the regulated entity . . . may be fairly treated as that of the state itself . . . only when it can be said that the state is *responsible* for the specific conduct of which the plaintiff complains.'" Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (italics in original, emphasis added). "A state normally can be responsible for a private decision only when it has exercised power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed that of the state." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

The Wyatt facility is owned by the Central Falls Detention Facility Corporation ("CFDFC"). Huguenin v. Ponte, 29 F. Supp. 2d 57, 60 (D.R.I. 1998); (See Memorandum of Cornell of RI and Cornell Companies in Support of Obj. to Plaintiff's Req. for Entry of Default, at attachment labeled Exhibit A, Aff. of P. Salisbury ¶ 2.) The CFDFC contracted with the

United States Marshals Service to provide a correctional facility in Rhode Island for the purpose of housing federal detainees and inmates. Id. (Aff. ¶ 5.) The CFDFC then contracted with Cornell of RI to operate the Wyatt facility and employ the correctional and administrative staff at that facility. Id. (see Aff. ¶ 6.) Thus, neither Cornell of RI nor Cornell Companies has contracted with the federal or state government. Therefore, it cannot be said that the federal or state government is responsible for the specific conduct of which the Plaintiff complains.

Moreover, Plaintiff fails to allege any facts sufficient to establish that the federal or state government is responsible for the conduct which gives rise to his claims. Plaintiff has failed to specify what power the federal or state government has exercised, or what significant encouragement either provided, to enable this Court to find that the alleged misconduct was the choice of the government. Accordingly, this Court should find that an insufficient nexus exists to find that any of the Defendants acted under color of federal or state law.

**c. Symbiotic Relationship Test**

Under the symbiotic relationship test, the acts of a private party are attributable to the government "only if the government 'has so far insinuated itself into a position of interdependence with the [private party] that it must be recognized as a joint participant in the challenged activity . . . .'" Rodriguez-Garcia v. Davila, 904 F.2d 90, 96-97 (1st Cir. 1990) (quoting Burton v. Wilmington Packing Authority, 365 U.S. 715, 725 (1961)). A key factor in determining whether such a symbiotic relationship exists is whether the government shared in any profits made by the private entity. Id. In essence, the test can be considered as a determination of whether the private entity is an *alter ego* of the government. Id. at 98-99. Other factors to be considered are whether the private entity performs a government function, whether it functions with substantial autonomy, to what extent it is financed independently of the government treasury and if a judgment sought to be entered against it would be satisfied out of the government treasury. Id. at 99.

Plaintiff fails to allege any facts sufficient to establish the requisite interdependence between the federal or state government and the Cornell corporations. In addition, no federal or state official participates in the day-to-day activities and efforts involved in housing detainees and inmates at the Wyatt facility and no judgment entered against Cornell of RI or Cornell Companies would be satisfied out of the government treasury. Thus, there is no interdependence between the federal or state government and the Cornell corporations sufficient to create a symbiotic relationship. Accordingly, neither Cornell of RI nor Cornell Companies acted under color of federal or state law and, therefore, neither is subject to Plaintiff's constitutional claims.

**d. This Court's Prior Decision in the *Sarro* Case is Not Binding Here**

In Sarro v. Cornell Corrections, Inc., 248 F. supp. 2d 52 (D.R.I. 2003), Chief Judge Torres held that the operation of a prison is a governmental function, thus subjecting private operators of prisons to constitutional liability. Id. at 60-61. However, that conclusion is not binding in this case and resulted from a misapplication of relevant law.

First, "District Court decisions do not establish the law of the circuit, or, indeed, do they even establish the law of the district." Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002)(quoting In re Executive Office of President, 215 F.3d 20, 24 (D.C. Cir. 2000))(emphasis added). Accordingly, this Court is not bound by any of the decisions rendered on issues relevant to this case by any United States District Judge of the District of Rhode Island in another case.

Second, this Court's analysis in the Sarro case involved a misapplication of relevant law. In Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927 (1st Cir. 1974), the Court of Appeals for the First Circuit held that "[w]hile federal officers may, at times, be subject to suit for unconstitutional behavior, [citing Bivens], there is no cause of action against private

parties acting under color of federal law or custom." 496 F.2d at 932 n.8 (emphasis added). This controlling and unequivocal language makes clear that private parties are not subject to Bivens actions brought in the district courts of the First Circuit. The Court in Sarro, however, held otherwise, and based this holding on an assumption that the First Circuit implicitly overturned its decision in Fletcher in its decision in Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447 (1st Cir. 1983), by recognizing that a private party acting under color of federal law may be liable under Bivens. 248 F. Supp. 2d at 58. However, several other courts have recognized Fletcher's refusal to allow Bivens actions against private parties as controlling authority in this jurisdiction. See, e.g., DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 720 (10th Cir. 1988); Morast v. Lance, 807 F.2d 926, 931 (11th Cir. 1987); Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1338 n.16 (9th Cir. 1987); Stevens v. Morrison-Knudsen Saudi Arabia Consortium, 576 F. Supp. 516, 520-21 (D. Md. 1983); Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 525 (D. Mass. 1976). But see Heinrich v. Sweet, 62 F. Supp. 2d 282 (D. Mass 1999)[3].

Furthermore, in Gerena, the plaintiff alleged that he was dismissed from his position as Deputy Director of the Puerto Rico Legal Services Center in violation of his due process rights under the Fifth and Fourteenth Amendments. Gerena, 697 F.2d at 448. The court found that plaintiff failed to "demonstrate that [defendant's] discharge of him from his position as Deputy Director can be fairly attributed to the federal government." Id. at 452. Hence, plaintiff's Bivens claims were dismissed. Id. However, the Gerena court made no mention of Fletcher v. Rhode Island Hospital Trust National Bank and failed to even acknowledge the issue of whether there is a cause of action against a private party acting under color of federal law or custom.

3 Despite acknowledging that other courts have recognized Fletcher as binding precedent in the First Circuit, the United States District Court for the District of Massachusetts construed Fletcher's express pronouncement as dicta and purportedly relied upon a "consensus of the majority of the other Circuit Courts of Appeal" in holding that "Bivens does extend to actions against private parties who act under color of federal law." Heinrich v. Sweet, 62 F. Supp. 2d 282, 306-7 (D. Mass. 1999). Although the Court referred to a "majority" consensus among the circuits, only four of the circuits had permitted Bivens claims against private parties. *See* id. at 306. Furthermore, as conclusively demonstrated hereafter, the Court improperly interpreted Gerena v. Puerto Rico Legal Servs., Inc., 697 F.2d 447 (1st Cir. 1983), as approval by the First Circuit that Bivens actions could lie against private parties. *See* id. at 306.

Furthermore, neither the issue nor the Fletcher decision was raised by the parties in their briefs to the First Circuit Court of Appeals in the Gerena case. (See Gerena Briefs, attached hereto as **Exhibit D**).

It is well-settled that a "court is not bound by precedent where the issue is not raised by counsel or discussed in the opinion of the court." Dynacraft Industries, Inc. v. United States, 118 F. Supp. 2d 1286, 1293 n.18 (Ct. Int'l. Trade 2000)(citing United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952)). "When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." National Cable Television Ass'n v. American Cinema Editors, Inc., 937 F.2d 1572, 1581 (Fed. Cir. 1991)(citation omitted). The issue of whether a private party may be sued for unconstitutional behavior while acting under color of federal law or custom was not raised by the parties or addressed by the court in Gerena. Thus, Gerena is not precedent to be followed on that precise issue. Accordingly, Fletcher remains binding precedent in this circuit for the rule that a private party may not be sued for unconstitutional behavior while acting under color of federal law or custom. The Court's conclusion to the contrary in Sarro therefore was misinformed.

Furthermore, the Court in Sarro, in finding that the defendants qualified as federal actors under the public function test, discounted the critical "exclusivity" element of the traditional public functions test. 248 F. Supp. 2d 52. When analyzing the public functions test, the Supreme Court has explained that:

> [O]ur holdings have made clear that the relevant question is not simply whether a private group is serving a [public function.] We have held that the question is whether the function performed has been 'traditionally the exclusive prerogative of the State.

Rodriguez-Garcia v. Davila, 904 F.2d at 928 (quoting Rendall-Baker v. Kohn, 457 U.S. 830, 842 (1982))(emphasis in original). The United States Supreme Court has expressly stated that "correctional functions have never been exclusively public . . . ." Richardson v. McKnight, 521 U.S. at 405 (emphasis added). The Supreme Court in Richardson v. McKnight went on to explain that private contractors have been heavily involved in prison management throughout our

nation's history. Id. at 405-06. Consequently, the private defendants in the instant case have not been performing a traditional public function exclusively reserved to the government. Therefore, the delegation of the task of prison management to a private party does not satisfy the "public function test" because the requisite "exclusivity" element is lacking.

The Court in Sarro relied on the United States Supreme Court opinion in Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614 (1991), in holding that the "exclusivity" element of the public functions test is no longer a prerequisite to a finding of government function. 248 F. Supp. 2d at 60. As stated above, there are three tests or standards that have been enunciated for determining whether private conduct is properly chargeable to the government. Rodriguez-Garcia v. Davila, 904 F.2d at 96-99. The Edmonson Court did not base its holding upon the "public functions test" but instead, relied upon the "nexus" or interdependence between the litigant, who exercises a peremptory challenge, and the court, who must discharge the prospective juror. Edmonson, 500 U.S. at 624.[4] Justice O'Connor, dissenting in Edmonson, also noted that the majority's finding of state action rested "on two empirical assertions. First, that private parties use peremptory challenges with the 'overt, significant participation of the government.' Second, that the use of a peremptory challenge by a private party 'involves the performance of a traditional function of the government.'" Edmonson, 500 U.S. at 633 (J. O'Connor, dissenting). It is thus clear that Edmonson was not decided upon the "public functions test." Therefore, the Sarro Court's interpretation of Edmonson abolishing the "exclusivity" element of the "public functions test" is not persuasive.

---

4 The Edmonson Court also explained the basis of its holding as follows:

> Our precedents establish that, in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority . . . . Based on our application of these three principles to the circumstances here, we hold that the exercise of peremptory challenges by the defendant in the District Court was pursuant to a course of state action.

Edmonson, 500 U.S. at 621-22 (emphasis added).

Finally, the Court in Sarro discarded the United States Supreme Court's finding in Richardson, 521 U.S. at 405, that "correctional functions have never been exclusively public," by explaining that this finding was made in the context of analyzing whether private prison guards were entitled to qualified immunity and not in the context of analyzing whether they are governmental actors subject to constitutional liability. 248 F. Supp. 2d at 60. The Supreme Court's finding of non-exclusivity, however, was based upon a very extensive historical analysis of correctional functions and qualified as a finding of fact. See Richardson, 521 U.S. at 405. The context within which this finding was made is irrelevant; it nevertheless qualifies as a final determination by the Supreme Court binding this Court. This Court's failure to acknowledge this finding of fact in Sarro therefore was erroneous.

## B. IF THIS COURT FINDS THAT OPERATION OF THE WYATT FACILITY IS A GOVERNMENTAL FUNCTION, WHICH IT SHOULD NOT, THIS COURT SHOULD FIND THAT IT WAS OPERATED UNDER COLOR OF FEDERAL LAW AND THAT THE PLAINTIFF'S CLAIMS CAN ONLY BE ASSERTED PURSUANT TO *BIVENS*

In his complaint the Plaintiff identifies "Cornell Corrections Donald W. Wyatt" as a "Federal Detention Facility." (Complaint ¶ III(B) (emphasis added).) The Plaintiff seeks relief for alleged "mistreatment of the Federal Inmates & the Federal Pre-Trial detainees while being confined at Donald W. Wyatt Detention Facility & Cornell Corrections." (Id. at V (emphasis added).) Finally, the Plaintiff refers to himself as a "Federal Detainee being held at the Wyatt Detention Center in Rhode Island" during the events of which he complains. (Id. at attachment labeled Complaint #1 (emphasis added).) All of the Plaintiff's claims as pled therefore arise under federal law.

Moreover, in Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52 (D.R.I. 2003), Chief Judge Torres of this Court held that a plaintiff detainee at the Wyatt Detention Facility could not

maintain § 1983 claims against the Cornell corporations because they act under color of federal, and not state, law. This is because "the authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government." Id. at 64. Chief Judge Torres reasoned that:

> Sarro and the other individuals incarcerated at Wyatt had been arrested by federal law enforcement agents and charged with federal crimes. They were being detained under authority of the United States government pending disposition of the charges against them. By law, they were in the custody of the United States Marshal who exercised ultimate authority over them. The power to detain them was derived solely and exclusively from federal authority and the defendants, in effect, acted as the Marshal's alter ego. The fact that the Marshal temporarily delegated the task of detaining those prisoners to the defendants did not convert that detention into anything other than an exclusively governmental function.

Id. at 61 (internal citations omitted). Thus, if operation of the Wyatt Facility is found to be an exercise of governmental authority, it must be considered an exercise under color of federal law and claims of constitutional violations can only be asserted pursuant to Bivens, 403 U.S. 388. See Sarro, 248 F. Supp. 2d at 63.

Although Judge Lagueux of this Court stated in dicta in Lacedra v. Donald W. Wyatt Detention Facility, 334 F. Supp. 2d 114 (D.R.I. 2004), that the Cornell defendants "acted under color of state law when they carried on the traditional public function of prison operations at the Wyatt Facility," id. at 140, this Court misapplied the law in that case.

Constitutional liability attaches to a private party performing a governmental function only when "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (emphasis added). Thus, it is the conduct of which the plaintiff complains that must emanate from state law or authority. None of the conduct alleged by the Plaintiff to have caused deprivations of his constitutional rights is attributable to the State of Rhode Island or was undertaken under color of its law. Nowhere does the Plaintiff allege that the conduct of which he complains was pursuant to or

under color of any state law. In fact, the Plaintiff notes that he was a "federal detainee" at a "federal detention facility" during the events complained of, (Complaint ¶ III(B) and attachment labeled Complaint #1), and he alleges and seeks relief for mistreatment of the "federal inmates and the federal pre-trial detainees." Id. at ¶ V. Plaintiff's failure to allege any facts demonstrating that the conduct of which he complains was pursuant to any state law precludes any finding that the Plaintiff has set forth a claim that the Cornell corporations were acting under color of state law.

"A defendant is deemed to have acted 'under color of state law' when he 'exercises power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.''" Polk County v. Dodson, 454 U.S. 312, 317-18 (1981). Plaintiff alleges that he was incarcerated at the Wyatt facility as a "federal detainee." (Complaint at attachment labeled Complaint #1). Thus, he was incarcerated under federal law. Nowhere in his complaint does he allege that he was incarcerated or held under state law.

Furthermore, neither Cornell of RI nor Cornell Companies was clothed with the authority of state law. Were the Wyatt facility privately owned and operated, Plaintiff's only avenue of relief would still be pursuant to Bivens, assuming the requisite government nexus existed. It is of no consequence that the Rhode Island General Assembly statutorily created a detention facility corporation to build a detention facility to house federal and/or state inmates. Although the Wyatt facility is owned by Central Falls Detention Facility Corporation, an instrumentality of the City of Central Falls pursuant to state enabling legislation, the conduct which the Plaintiff claims deprived him of constitutional rights has nothing to do with the ownership of the Wyatt facility. Rather, the Plaintiff complains of the conditions of his confinement as a federal detainee in the custody of the United States Bureau of Prisons and the Federal Marshals Service. Plaintiff was not confined by virtue of any state law or authority nor did he even allege that fact. Thus,

the conduct he complains of, the management and conditions of his confinement, is in no way attributable to the State of Rhode Island. Accordingly, neither Cornell of RI nor Cornell Companies can be considered to have taken any action pursuant to state law.

Accordingly, the Plaintiff's constitutional claims are properly construed not as claims pursuant to 42 U.S.C. § 1983 but rather as Bivens claims.

### C. THE PLAINTIFF'S *BIVENS* CLAIMS MUST FAIL BECAUSE SUCH CLAIMS CANNOT BE ASSERTED AGAINST PRIVATE CORPORATIONS

Even if the Plaintiff had properly named Cornell Corrections of Rhode Island, Inc., instead of "Cornell Corrections Donald W. Wyatt" and "Cornell Corrections, U.S.A." as the entity which operates Wyatt, and even if this Court finds that Cornell of RI acted under color of federal law in operating the Wyatt Facility, the Plaintiff's Bivens claims must fail. In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the United States Supreme Court held that Bivens claims may be asserted only against individual officers who commit unconstitutional acts, and not against their employer corporations. Id. at 71-72. This is because "[t]he purpose of Bivens is to deter individual federal officers from committing constitutional violations. . . For if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." Id. at 70-71. Thus, in Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 62-63 (D.R.I. 2003), this Court held that Malesko was dispositive of the plaintiff's Bivens claims against the corporate defendant: "while a prisoner at a federal prison can bring a Bivens action against an individual officer, he 'may not bring a Bivens claim against the officer's employer.'" Id. at 62-63 (quoting Malesko, 534 U.S. at 71-72).

In this case, the Plaintiff has not named any individual defendants. (See Complaint.) While the Plaintiff has alleged four distinct claims in his Complaint involving a fellow inmate,

correctional officers and Wyatt facility staff, the Plaintiff has failed to join any of these individuals as defendants. This is contrary to the purpose of Bivens and has been expressly prohibited by this Court and by the Supreme Court of the United States. Accordingly, the Cornell corporations are entitled to summary judgment.

### D. IF THIS COURT FINDS THAT THE PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT PURSUANT TO 42 U.S.C. § 1983, WHICH IT SHOULD NOT, THE PLAINTIFF'S CLAIMS MUST FAIL, AS THERE IS NO *RESPONDEAT SUPERIOR* LIABILITY UNDER § 1983

The United States Supreme Court and this Court have consistently held that claims brought pursuant to 42 U.S.C. § 1983 cannot be predicated upon the doctrine of *respondeat superior*. Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-404 (1997) (rehearing denied, 520 U.S. 1283 (1997)); Monell v. Department of Social Services, 436 U.S. 658, 690-692 (1978); Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 63 (D.R.I. 2003). A governing body may not be held liable under § 1983 solely because it employs a tortfeasor. Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 692). This is because "[s]ection 1983 permits an individual whose constitutional rights are violated to recover damages from the 'person' responsible for the violation." Sarro, 248 F. Supp. 2d at 63 (quoting 42 U.S.C. § 1983). Accordingly,

> in Monell and subsequent cases, [the United States Supreme Court] ha[s] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

Brown, 520 U.S. at 403-404 (internal citations omitted); see also Gabriel v. Corrections Corporation of America, 211 F. Supp. 2d 132, 138 (D.D.C. 2002) (stating that the plaintiff, to state a claim under § 1983 against the corporate defendant, must allege that his injuries occurred

as a result of a specific corporate policy or custom). "Where a plaintiff fails to allege the existence of any policy or custom that could have arguably violated his rights, dismissal is proper." Gabriel, 211 F. Supp. 2d at 139 (citing Polk County v. Dodson, 454 U.S. 312, 326-327 (1981)).

In the present case, the Plaintiff has failed to plead sufficient facts giving rise to a claim against the Cornell corporations under 42 U.S.C. § 1983. The Plaintiff has failed to allege that his constitutional rights were violated as a result of any policy or custom of Cornell of RI or Cornell Companies. (See Complaint.) In fact, the Plaintiff's detailed allegations preclude even an inference that the alleged wrongful conduct of which he complains was the result of any corporate policy. Instead, the allegations in the complaint detail alleged wrongful conduct that can only be that of individuals.

The Plaintiff's first claim alleges that a nurse at the Wyatt Facility disclosed his medical information to a correctional officer. (Complaint ¶ IV at (1) and attachment labeled Complaint #1.) Such conduct can only be attributed to the individual nurse involved and does not involve any policy or custom of the Cornell corporations. Similarly, the Plaintiff's second claim alleges that a case worker may have somehow contaminated a tube of toothpaste that was given to him. (Complaint ¶ IV at (2) and attachment labeled Complaint #2.) Such conduct could only be attributed to the unidentified case worker, as neither Cornell of RI nor Cornell Companies could have authorized him or her to engage in such conduct. Third, the Plaintiff alleges that correctional officers at the Wyatt Facility assaulted him. (Complaint ¶ IV at (3) and attachment labeled Complaint #3.) Any such assault would constitute individual acts of volition on the part of the correctional officers involved and could not be attributed to the Cornell corporations. Finally, the Plaintiff alleges that three correctional officers at the Wyatt Facility failed to assist

him while he was being assaulted by another inmate for over one minute. (Complaint ¶ IV at (4) and attachment labeled Complaint #4.) This alleged failure on the part of the correctional officers could only be attributed to them individually, as the Plaintiff has not alleged that either Cornell of RI or Cornell Companies has any policy or custom authorizing correctional officers to ignore inmate assaults.

Furthermore, the Plaintiff's allegations contained in his Answers to Interrogatories preclude even an inference that the alleged wrongful conduct of which he complains was the result of any policy of the Cornell corporations. The Plaintiff claims that the alleged actions of the correctional officers constituted "excessive force," (Plaintiff's Answers to Interrogatories, attached hereto as **Exhibit E**, at No. 2, page 3) which implies that the correctional officers exceeded the scope of authority granted to them by Cornell of RI, absent an allegation to the contrary. Furthermore, the Plaintiff himself states that the correctional officers acted "beyond [the] scope of procedure" in allegedly assaulting him, id., and that they engaged in the conduct complained of "for their own amusement and satisfaction." Id. at 4 (emphasis added). The Plaintiff acknowledges that the alleged failure of the correctional officers to assist him during an assault constituted individual acts of volition, by stating that he was afraid of what might happen "before the guards decide to intervene and prevent any further injuries." Id. (emphasis added). Finally, the Plaintiff admits that the correctional officers' alleged actions were contrary to the policy of Cornell of RI in stating that "they couldn't do a job that they are trained for" and that "they have no respect for the corporation rules and procedures." Id. (emphasis added).

Since the Plaintiff's allegations preclude any inference that the alleged wrongful conduct of which he complains was a result of any policy or custom of the Cornell corporations, the

Plaintiff cannot maintain an action under 42 U.S.C. § 1983. This Court should therefore grant summary judgment in favor of Cornell of RI and Cornell Companies.

## III. CORNELL COMPANIES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT CANNOT BE HELD LIABLE FOR THE ACTIONS OF ITS SUBSIDIARY

Even if this Court finds that there is a genuine issue of material fact concerning liability on the part of Cornell of RI, Cornell Companies is entitled to summary judgment on all the Plaintiff's claims. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). "Thus, it is hornbook law that the exercise of the control which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary." Id. (internal quotation marks omitted); see also Scully Signal Company v. Joyal, 881 F. Supp. 727, 736 (D.R.I. 1995) (citing Vennerbeck & Clase Co. v. Juergens Jewelry Co., 53 R.I. 135, 138 (1933)) ("Generally, a corporation is treated as a separate legal entity and its liabilities are not attributable to its owners and officers.")

Cornell of RI operates the Wyatt Facility pursuant to a contract with the Central Falls Detention Facility Corporation. (See **Exhibit B**, Affidavit of Wayne Salisbury ¶ 2.) Cornell Companies is not a signatory to that contract. Id. at ¶ 3. The personnel that operate the Wyatt Facility are all employees or employees of subcontractors of Cornell of RI, and Cornell Companies is merely the corporate parent to its wholly owned subsidiary, Cornell of RI. Id. at ¶ 7, 3. Thus, Cornell Companies cannot be liable for any claim that employees of Cornell of RI violated the Plaintiff's rights. Accordingly, summary judgment should enter in its favor.

## IV. THIS COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF CORNELL OF RI AND CORNELL COMPANIES BECAUSE THE PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM AGAINST ANY LEGAL ENTITY, AND HAS FAILED TO PERFECT SERVICE OF PROCESS OF THAT ACTION

Even if the Plaintiff's claims would be otherwise viable, this Court should grant summary judgment in favor of Cornell of RI and Cornell Companies because the Plaintiff has failed to state a cognizable claim against any entity which could be subject to suit. Furthermore, the Plaintiff's purported service of that action upon Cornell of RI and Cornell Companies did not comply with Rule 4 of the Federal Rules of Civil Procedure and therefore failed to bring those entities within this Court's jurisdiction.

### A. THE ACTION AGAINST "CORNELL CORRECTIONS DONALD W. WYATT"AND "CORNELL CORRECTIONS, U.S.A." IS VOID *AB INITIO* AND SERVICE OF THAT ACTION ON "CORNELL CORRECTIONS, INC." IS INEFFECTUAL

In this case the Plaintiff has failed to serve sufficient process upon either Cornell of RI or Cornell Companies. The Plaintiff's claims against "Cornell Corrections Donald W. Wyatt" and "Cornell Corrections, U.S.A." are void *ab initio*, as no such legal entities exist. To the extent that the Plaintiff intended to name the Donald W. Wyatt Detention Facility as a defendant, such a claim would also be void, since "Donald W. Wyatt Detention Facility" is merely the name of a building and is not a legal entity that can be subject to suit. See Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 62 n. 2 (D. R.I. 2003) ("[B]ecause Wyatt is not a legal entity, the claims against it should be dismissed for that reason").

> A civil action can be maintained only against a legal person, i.e., a natural person or an artificial or quasi-artificial person, a non-entity is incapable of suing or being sued. Where a suit is brought against an entity which is legally non-existent, the proceeding is void *ab initio* and its invalidity can be called to the attention of the court at any stage of the proceeding. The common-sense rationale of this rule is that courts sit to settle disputes between existing parties and when the defendant is not a legal person no lawful judgment can be rendered against such a non-entity. Accordingly, it is a corollary to this rule that the

> objection that a plaintiff or defendant is non-existent is not subject to waiver, as in the case of misnomer or lack of legal capacity, because the defect is jurisdictional.

Oliver v. The Swiss Club Tell, (222 Cal. App. 2d 528, 537-38) (Cal. App. Ct. 1963) (citations omitted). See also, Jenkins v. The Estate of Nicholas A. Thomas, 800 P.2d 1358, 1359 (Col. App. Ct. 1990) (holding that actions may only be brought against legal entities, to whom judgment may be awarded or against whom they may be enforced); Patterson v. V & M Auto Body, 589 N.E.2d 1306, 1309 (Ohio 1992)("If a defendant in a lawsuit is not an actual or legal entity, then any judgment rendered against that entity is void.")

Further, where an action should have been brought against a separate and distinct entity other than the one named as a defendant, there is no misnomer. "Rather, there is a mistake in identity and the wrong party is under no obligation to correct that mistake." Matsushita Electric Corporation of American v. McAllen Copy Data, Inc., 815 S.W.2d 850, 852 (Texas App. Ct. 1991). Therefore, the summons served at the Wyatt Facility which designated "Cornell Corrections, Inc." as the named defendant is not effective against Cornell Corrections of Rhode Island, Inc. or Cornell Companies, Inc., and it does not provide the Court with jurisdiction over either of those legal entities. The effect of naming and serving the wrong defendant who may be related to the correct defendant may toll the statute of limitation, but that misnomer of party does not act to substitute the correct defendant for the incorrect one. Daca, Inc. v. Commonwealth Land Title Insurance Co., 822 S.W.2d 360, 363 (Texas App. Ct. 1993) (emphasis added); see also Lewis v. The West Side Trust and Savings Bank, 36 N.E.2d 573, 574-75 (a plaintiff cannot give the court jurisdiction over the person by having service of a summons and complaint made upon that person when they are not named as a defendant in the complaint).

Due process prevents the entry of judgment against any person designated by a fictitious name, as a fictitious person is not a party to a suit. Bencivenga v. J. J. A. M. M., Inc., 609 A.2d

1299, 1303 (N.J. Super. 1992). "The person plaintiff identifies as a fictitious defendant only becomes a party to the suit when the defendant's true name is substituted in an amended complaint and service is effected. It is at the point of service on the true defendant that a court gains jurisdiction consonant with due process, and a person becomes a party to a suit." Id. (emphasis added).

If a plaintiff fails to perfect service of process on a defendant, the Court has no jurisdiction over that defendant. Brooks v. Richardson, 478 F.Supp. 793, 795 (S.D.N.Y. 1979). Here, despite knowing the existence of Cornell Companies from his prior litigation and that fact that one phone call to the Rhode Island Secretary of State's office would provide the Plaintiff with the identity of Cornell of RI, the Plaintiff has instead chosen to assert claims and effect process on non-existent entities. Neither those claims nor that process have any legal effect. Because the plaintiff has asserted no claim against any identifiable legal entity or person, his action should be dismissed on the merits.

### B. DELIVERY OF THE SUMMONS TO WARDEN WAYNE SALISBURY AT THE WYATT FACILITY DID NOT CONSTITUTE SUFFICIENT SERVICE OF PROCESS UPON CORNELL COMPANIES

Service of process on corporate defendants must be accomplished by delivery of a summons and complaint to an officer, managing or general agent or other agent authorized to accept service of process, by appointment or by law, Fed.R.Civ.P 4(h), or by leaving a copy of the summons and complaint at an office of the corporation with a person employed therein, R.I.Super.R.Civ.P. 4(e)(3) (as made applicable to Federal actions by Fed.R.Civ.P. 4(h)(1) and 4(e)(1)). Service of process upon foreign corporations can be effected by delivery, or by mailing a copy of the summons and complaint to an officer or agent of the corporation or to the

corporation at the corporation's business address. (R.I.Super.R.Civ.P. 4(f)(2) (as made applicable to Federal actions by Fed.R.Civ.P. 4(h)(1) and 4(e)(1)).

Even if this Court finds that the documents sent by the Plaintiff to the Wyatt Facility constituted sufficient process, this action should still be dismissed under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process upon Cornell Companies. The summons directed to "Donald W. Wyatt Detention Center, Et, Al." was never delivered. (See Process Receipt and Return, attached hereto as Exhibit C.) The summons directed to "Cornell Corrections, Inc." was delivered to Warden Wayne Salisbury at the Wyatt Facility at 950 High Street, Central Falls, Rhode Island. (See Exhibit A, Process Receipt and Return.) Warden Salisbury, however, was neither an officer nor a managing or general agent of Cornell Companies. (See Exhibit B, Affidavit of Wayne Salisbury ¶ 5.) Warden Salisbury was likewise not an agent authorized to receive service of process on behalf of Cornell Companies. Id. at ¶ 6. Finally, the personnel that operate the Wyatt Facility are all employees of Cornell of RI or its subcontractors, and Cornell Companies is merely the corporate parent to its wholly owned subsidiary, Cornell of RI. Id. at ¶ 7, 3. Service of process upon Warden Salisbury therefore was ineffective as to Cornell Companies. Since the Plaintiff has failed to perfect service of process upon Cornell Companies, the present action should be dismissed.

**CONCLUSION**

For all of the above stated reasons, the plaintiff's complaint should be dismissed, and

summary judgment should enter in favor of Cornell of RI and Cornell Companies.

Cornell Corrections of Rhode Island, Inc. and
Cornell Companies, Inc.,
By their attorneys,

Dennis T. Grieco, II #5057
GIDLEY, SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644 - Fax: 331-9304

**CERTIFICATION**

Thomas F. Cooley, Pro Se
I.D. W84908
Old Colony Correctional Center
1 Administration Rd.
Bridgewater, MA 02324

I hereby certify that on the 3rd day of November 2005, a true and accurate copy of the within was served upon the above-named plaintiff.