IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

JULIO C. LOPEZ GERENA, )
Plaintiff-Appellant )
Vs. ) NO. 82-1474
PUERTO RICO LEGAL SERVICES, INC., )
Defendant-Appellee. )

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
PUERTO RICO

-----------

BRIEF FOR APPELLANT

-----------

JOSE E. FERNANDEZ SEIN
Attorney for Defendant-Appellee
P.O. Box 9949
San Juan, Puerto Rico 00908

A. J. AMADEO MURGA
Attorney for Plaintiff-Appellant
1105 Banco Popular Center
Hato Rey, Puerto Rico 00918

EXHIBIT
D

TABLE OF CONTENTS


| | | PAGES |
|---|---|---|
| I. | STATEMENT OF ISSUES | 1 |
| II. | STATEMENT OF THE CASE | 1-3 |
| III. | STATEMENT OF FACTS | 3-7 |
| IV. | ARGUMENT | 7 |
| | 1. WHETHER THE DISTRICT COURT ERRED IN VACATING THE JUDGMENT AND IN DISMISSING THE COMPLAINT ON THE BASIS OF LACK OF JURISDICTION AND IN FAILING TO FIND THAT DEFENDANT-APPELLEE'S ACTS IN DISMISSING PLAINTIFF-APPELLANT WITHOUT DUE PROCESS WERE GOVERNMENTAL ACTIONS AND THUS SUBJECT TO THE STRICTURES OF THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES. | 7-16 |
| | 2. WHETHER THE DISTRICT COURT ERRED IN REFUSING TO REINSTATE PLAINTIFF-APPELLANT TO HIS FORMER JOB EVEN THOUGH THE JURY'S VERDICT WAS IN PLAINTIFF'S FAVOR. | 16 |
| V. | CONCLUSION | 17 |
| | CERTIFICATE OF SERVICE | 17 |

# CITATIONS


| CASES CITED: | PAGES |
|---|---|
| 1. CSC vs. Letter Carriers, 413 US 548, 564 (1972) | 10, 15 |
| 2. Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976) | 9, 14 |
| 3. Hines vs. Cenla Community Action Committee, Inc., 474 F2d 1052 (1973) | 9 |
| 4. Mathis vs. Opportunities Industrial Centers, Inc., 545 F2d 97 (9 Cir 1976) | 15 |
| 5. Oppenheimer Méndez vs. Acevedo, 388 FSupp 326, affirmed 512 FSupp 1373 (1 Cir 1975) | 16 |
| 6. Polk County vs. Dobson, 50 LW 4077 | 12 |
| 7. Randell Baker vs. Kohn, 641 F2d 14 (1 Cir 1981), affirmed 50 LW 4826 (1982) | 9, 14<br>13, 16 |
| 8. Rivas Tenorio vs. L.A.I., 554 F2d 492 (1 Cir 1977) | 16 |
| 9. Smith vs. Ehrlich, 430 FSupp 818 (1976) | 10, 15 |
| 10. United States vs. Orleans, 425 US 807 (1976) | 12 |
| 11. Varela vs. Jorge Segarra Olivero and others, Opinion issued by Judge José V. Toledo, Civil No. 77-749 | 2 |

| UNITED STATES CONSTITUTION AND STATUTES: | PAGES |
|---|---|
| 1. Hatch Act, 5 USC 1502(a) | 10, 11, 14 |
| 2. Legal Services Corporation Act, 1974 | 4, 5, 6, 8 |
| (a) Rules and Regulations | |
| 1616.1; 1616.3; 1616.5; 1616.6 | 6 |
| 1607.1(h) | 8 |
| (b) Title 28 USC, Section 1331 | 3 |
| (c) Title 42 USC, Section 1983 | 3 |
| (d) Title 42 USC, Section 2996 | 4, 9 |
| (b)(a); (c)(a); (d)(f); (e) | 4 |
| (b)(d) | 5 |
| (e)(b) | 4, 7 |
| (e)(b)(5); (e)(e) | 7 |
| (f) | 6 |
| (f)(a)(2) | 5 |
| (f)(a)(6) | 10 |
| (f)(b)(8) and (9) | 5 |
| (f)(c) | 5 |
| (h)(c)(2) | 6 |

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| JULIO C. LOPEZ GERENA, Plaintiff-Appellant | |
| Vs. | NO. 82-1474 |
| PUERTO RICO LEGAL SERVICES, INC., Defendant-Appellee. | |

# BRIEF ON BEHALF OF PLAINTIFF-APPELLANT

## I. STATEMENT OF ISSUES:

1. Whether the District Court erred in vacating the judgment and in dismissing the Complaint on the basis of lack of jurisdiction and in failing to find that Defendants-Appellees' acts in dismissing Plaintiff-Appellant without due process were governmental action and thus subject to the strictures of the Fifth Amendment of the Constitution of the United States.

2. Whether the District Court erred in refusing to reinstate Plaintiff-Appellant to his former job even though the jury's verdict was in Plaintiff's favor.

## II. STATEMENT OF THE CASE:

This is an action brought by Plaintiff-Appellant, Julio C. López Gerena, against his former employer, Puerto Rico Legal Services, Inc., claiming that he was dismissed from his employ as a lawyer in one of the offices of Puerto Rico Legal Services in violation of the due process clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

At an early stage of the case, Defendant-Appellee had presented a Motion to Dismiss for Lack of Jurisdiction on the basis that Defendant was a private non-governmental organization and, therefore, its actions were not subject to the limitations of the Fifth and Fourteenth Amendments. This Motion was opposed by Plaintiff-Appellant and denied by the District Court in an Order dated May 11, 1981, issued by Honorable Carmen Consuelo Cerezo. See Appendix, Pages 26-27. Judge Cerezo based her denial of Defendant's Motion on an earlier Opinion which had been issued by the late Judge José V. Toledo in the case of Varela vs. Jorge Segarra Olivero and others, Civil No. 77-749, in which the same jurisdictional question had been raised, amply considered, and decided contrary to the Defendant by Judge Toledo. See Appendix, Pages 12-25.

During the late stages of the case, before trial and during the trial of the case before Judge Robert A. Grant, Defendant again raised its jurisdictional argument but it was overruled.

The case went to the jury, who brought the verdict in favor of Plaintiff in the amount of SIXTY-FIVE THOUSAND DOLLARS ($65,000.00) and judgment was entered in accordance with the verdict. See Appendix, Page 40.

By a post-trial motion, Defendant raised again its jurisdictional argument. See Appendix, Pages 43-54. This time the Hon. Robert A. Grant entertained the motion and, after considering the Opposition filed by Plaintiff, reversed the earlier rulings, found that there was lack of jurisdiction, vacated the judgment,

and dismissed the case. See Appendix, Pages 68-90. Plaintiff timely appealed. See Appendix, Page 93.

III. STATEMENT OF FACTS:

Plaintiff's Complaint, filed April 18, 1980, alleged as jurisdictional grounds that the Defendant was both a creature of the Commonwealth and Federal Governments and that Defendant's actions were both Federal and State actions. Jurisdiction was claimed both under Section 1983, Title 42 USC, and Section 1331, Title 28 USC. See Plaintiff's Appendix, Page 2. The District Court originally found jurisdiction based on the Opinion of Judge Toledo on the grounds that the acts of Defendant amounted to action under color of federal law. Therefore, that there was jurisdiction under Section 1331, Title 28 USC. See Appendix, Pages 18-25.

Because Defendant's original Motion for Lack of Jurisdiction was denied on the strength of Judge Toledo's Opinion, no hearing was held at any time for the purpose of offering evidence as to the nature of Puerto Rico Legal Services, Inc. As far as Plaintiff-Appellant is concerned, when the trial came, the jurisdictional issue had already been disposed of an the ruling of Judge Cerezo, which adopted Judge Toledo's ruling, was the law of the case.

Therefore, the jurisdictional facts are those which appear from Judge Toledo's Opinion and from the provisions of the federal law and regulations that govern Puerto Rico Legal Services, Inc., and its parent, Legal Services Corporation.

From them, the pertinent following facts appear:

1. Puerto Rico Legal Services, Inc., is a product of the Legal Services Corp. Act, 1974, Section 2996, et seq, Title 42 USC, whereby Congress implemented its public policy of providing financial support for legal assistance in non-criminal matters to persons financially unable to afford legal assistance. Section 2996 (b)(a).

2. The Legal Services Corporation created, although was not to be considered a department, agency, or instrumentality of the Federal Government, is governed by an eleven-member board of directors appointed by the President with the consent of the Senate. Section 2996 (c)(a). The officers and employees of the Corporation are considered officers and employees of the Federal Government for the purposes of compensation relating to work injuries, civil service retirement, and life and health insurance. Section 2996 (d)(f).

3. The Legal Services Corporation is totally funded by the Federal Government with the purpose of channelling funds to entities who furnish legal assistance to poor people. Section 2996 (e).

4. The Corporation is granted wide powers over its recipients and their employees to insure that they comply with the Legal Services Corporation Act, its rules, regulations, and guidelines promulgated under said law. Section 2996 (e)(b).

5. The Law and the rules and regulations enacted under its authority empowers the Legal Services Corporation to establish,

in consultation with the Director of the Office of the Management and Budget and with the Governor of the several states, maximum income levels for individuals eligible for legal assistance under the Law and establish guidelines to determine eligibility of clients. Section 2996 (f)(a)(2). The Law, then, is specific as to what type of legal services can be rendered to clients, and specifically forbid recipients from rendering certain types of legal services. For instance, litigation seeking to enforce the right to non-therapeutic abortion is prohibited, as well as litigation relating to the desegregation of any elementary or secondary school or school system. Section 2996 (f)(b)(8) and (9).

6. The Law also orders the Legal Services Corporation to insure "that any recipient organized solely for the purpose of providing legal assitance to eligible clients is governed by a body of at least sixty per cent (60%) of which consist of attorneys who are members of the Bar of the State in which the legal assistance is to be provided..." Section 2996 (f)(c). It is also the duty of the Corporation under the Law to monitor, evaluate, and make sure that the recipients comply with all the provisions of the Legal Services Act. Section 2996 (b)(d).

7. The record and reporting provisions of the Law are very specific and the Comptroller General of the United States has the power to "inspect the books, accounts, financial records, files, and other papers or property belonging to or in use by such grantee, contractor, or person, or entity, which relate to the

disposition or use of funds received from the Corporation." Section 2996 (h)(c)(2).

8. The statutes confer detailed power over the conduct of the employees of the Corporation and its recipients to insure that they comply with the Legal Services Corporation Act, its Rules and Regulations, and guidelines promulgated under said law. Section 2996 (f).

9. The Law and the Regulations establish provisions to insure that recipients will choose highly qualified attorneys for its staff. Section 1616.1 of the Regulations. It orders the recipient to establish the qualifications for individual positions for attorneys and details the relevant factors to be taken into consideration. Section 1616.3 of the Regulations.

10. Section 1616.5 provides as follows:

> "When equally qualified applicants are under consideration for an attorney position, a recipient shall give preference to an applicant residing in the community to be served."

11. Section 1616.6 provides:

> "A recipient shall adopt employment quelifications, procedures, and policies that need the requirements of applicable laws prohibiting discrimination in employment, and shall take affirmative action to insure equal employment opportunity."

12. The activities of the staff attorneys of recipients are regulated and limited by the provisions of the Law and Regulations. The Law specifically forbids employees or recipients, while carrying out legal assistance activities, to engage in strikes, pickets, or public demonstrations or other types of activities, and provides

for a suspension of employees or recipients in case of such violations. Section 2996 (e)(b)(5). Staff atrorneys of recipients are deemed to be state or local employees for the purposes of Section 1501, et seq, Title 5 USC, Section 2996 (e)(e), and are barred from participating in any political campaign or political activities or be candidates for public or party office. Section 2996 (f)(a)(6).

13. The Law also requests recipients to take disciplinary action against its employees in case of violations by said employees of the provisions of Law or its Rules, Regulations, or guidelines. Section 2996 (e)(b).

IV. ARGUMENT:

1. Whether the District Court erred in vacating the judgment and in dismissing the Complaint on the basis of lack of jurisdiction and in failing to find that Defendant-Appellee's acts in dismissing Plaintiff-Appellant without due process were governmental actions and thus subject to the strictures of the Fifth Amendment of the Constitution of the United States.

How far can government inject itself into an activity, program, or organization without giving it its color? It cannot be denied that Congress has implemented a broad comprehensive program of legal aid in civil cases for the poor of the nation, paid, controlled, and dominated by the Federal Government. Although the Legal Services Corporation has been given the form

of a private non-profit corporation, the fact that all its members are appointed by the President, with the consent of the Senate, shows that it is an instrumentality or activity of the Federal Government or acts under color of Federal Law. The recipients, including Puerto Rico Legal Services, Inc., exist, organized under norms dictated by Federal Law, solely for the purpose of providing legal aid with the money received from the Federal Government. No doubt that the Federal Government has chosen the instrument of establishing a non-profit corporation in order to render the services of legal aid to the poor. But by choosing such a system, it has not meant to give legal aid through a system of subsidizing purely privately operated institutions. Both, Legal Services Corporation and its recipients, were created or tailored made to render the services and fulfill the wishes of Congress with regard to assisting the poor in the civil litigation.

Puerto Rico Legal Services, Inc., can hardly be considered a privately operated institution if we consider that it was formed based on the directives and provisions of the Legal Services Corporation Act, which provided its method of organization and composition of its membership and Board of Directors. Its method of selection and composition is subject to the approval of the Legal Services Corporation. See Section 1607.1 (h) of the Regulations. If we add to this the fact that there exists complete funding from the Federal Government and that the activities of the recipient entities are limited, regulated, and controlled by the provisions of the Law and the Regulations, very

little is needed to find that the Federal Government actually thus control the institution under the test referred to in Randell Baker vs. Kohn, 641 F2d 14 (1 Cir 1981), affirmed 50 LW 4826 (1982).

Hardly, in the light of the provisions established in Sections 2996, et seq, Title 42 USC, and the Rules and Regulations established thereunder, can anyone claim that Puerto Rico Legal Services, Inc., remains free in fact to control its own affairs. The case of Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976), is applicable. There the Court found that the Fifth Amendment was applicable to a discharge of employees by a federally and state funded regulated Headstart Program. This Court, in Randell Baker vs. Kohn, supra, distinguished said ruling on the grounds that the hiring and firing were under the control of a Board of Directors, the composition of which was controlled in part by the Regulations. In the present case, precisely, the composition of the Board of Directors of Puerto Rico Legal Services, Inc., is totally controlled by the Regulations. Compare Hines vs. Cenla Community Action Committee, Inc., 474 F2d 1052 (1973), where a privately appointed Board of Directors was involved.

The regulation of personnel policies of recipients is greatly significant. Substantial limitations and regulation on the discretion of staff attorneys of recipients to take cases is imposed. They are prevented from handling certain types of cases and from engaging in certain type of conduct which, as the lawyer of a private organization, would be perfectly legal or proper. For

instance, they cannot take cases seeking to procure the right to obtain a non-therapeutic abortion nor participate in any picket or boycot. Neither to engage in pro-labor or anti-labor activities. What is more, attorneys of these so called private organizations cannot participate in any political activity. Failure to comply with these injunctions would cause their dismissal from employment. This prohibition is, in our opinion, determinative of the existence of federal action in the present case. In Smith vs. Ehrlich, 430 FSupp 818 (1976), it was held that staff attorneys of recipient legal services agencies could not participate in partisan or non-partisan political activities because Section 2996 (f)(a)(6) that make applicable the Hatch Act, 5 USC 1502(a), to said employees, was constitutional, as Congress has the power to regulate the partisan political activities of government employees and could also, as to said public employees, even prohibit them to enter non-partisan political activities. Surely, if said employees are private employees, Congress cannot attach such conditions, for it would be unconstitutional. See Smith vs. Ehrlich, Page 820. Footnote 3. Congress' power to regulate the speech of its employees differs substantially from that of its powers to limit the speech of its citizens in general. CSC vs. Letter Carriers, 413 US 548, 564 (1972).

In Smith vs. Ehrlich, supra, the Court stated:

> "The determination of the extent to which political activities of government employees shall be regulated lies primarily with Congress." Page 821. (Emphasis ours.)

If these are federal employees, then we cannot conceive how did the acts of Puerto Rico Legal Services, Inc., its employees, and its Board of Directors, in dismissing and ratifying the dismissal of Plaintiff without due process, is not the act of the Federal Government. The District Court gave weight to the fact that Congress had especifically provided that the Legal Services Corporation would not be considered "a department, agency, or instrumentality, of the Federal Government." Congress' attempt by words to disassociate the Federal Government from Legal Services Corporation and the State Legal Services organizations, looses all credibility and ceases to have weight when, on the other hand, Congress has, by other provisions of the law, made said institutions and their acts, actions of the Federal Government.(1) To assert that the Legal Services Corporation exists independently of the Federal Government, in spite of the fact that its Board of Directors is appointed by the President, to administer a budget approved and provided by Congress and with employees which are Federal employees for compensation, for work injuries, Civil Service Retirement, Life and Health Insurance, Freedom and Information Act, and the Hatch Act, is just too difficult to accept. It is equivalent of saying that whatever Congress says is private, it's private, by fiat of Congress irrespective of constitutional principles.

---

(1) Through Congressional appropiations and through "Presidentially appointed Board of Directors by and with the advice and consent of the Senate", Congress effectively assured public accountability of the Corporation. See Page 3874, U.S. Code Congressional and Administrative News (1974).

Neither the fact that Legal Services Corporation and its State Services Organizations require independence, militates against the finding that it is acting under Federal Law when one of its employees is dismissed by the agency in violation of due process. The independence that is needed is that of the attorneys while discharging their duty to their clients. In this respect, the case of Polk County vs. Dobson, 50 LW 4077, decided December 14, 1981, is applicable. There the Supreme Court of the United States held that a public defender, an employee of the State, does not act under color of the State Law when performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding. The Court, nevertheless, made the distinction that said public employee may act under color of State Law doing other functions.

The Supreme Court stated as follows:

> "In concluding that Shepard did not act under color of State Law in exercising her independent professional judgment in a criminal proceeding, we do not suggest that a public defender never acts in that role. In Branti vs. Finckel, 445 US 500 (1980), for example, we found that a public defender so acted when making, hiring, and firing decisions on behalf of the State. It may be - although the question is not present in this case - that a public defender also would act under color of State Law while performing certain administrative and possibly investigative functions." Polk County vs. Dobson, 50 LW, at Page 4080.

The District Court relied also in United States vs. Orleans, 425 US 807 (1976), which dealt with the status of a community action agency funded by the Office of Economic Opportunity. The Supreme Court held there that such an agency did not become an

agent or instrumentality of the United States for the purpose of the Federal Tort Claim Act. We consider that the test to determine whether the action of an entity is that of the Federal Government is narrower for the purposes of the Federal Torts Claim Act than for constitutional purposes.

The case of Randell Baker vs. Kohn, 641 F2d 14 (1981), affirmed by the Supreme Court of the United States, see 50 LW 4826, Opinion of June 25, 1982, is very distinguishable from the facts of the present case. There the Court was dealing with an isolated non-profit school on privately owned property. The school was founded as a private institution. In the present case we know that Puerto Rico Legal Services, Inc., was just created specially to imprement the provisions of Legal Services Corporation Act. In Randell Baker, personnel policies were few and, contrary to the present case, did not impose the substantial limitations on the freedom of action of employees with respect to the manner in which they fulfill their duties, including the prohibition now existing in the present case against political activities. These limitations, present in this case, we claim have converted the employees from merely private employees to public employees.

In Randell Baker vs. Kohn, 50 LW 4826, at Page 4828, the Supreme Court, in finding that the New Perspective school was not a state actor, said:

> "The school, like the nursing homes, is not fundamentally different from many private corporations whose business depends primarily on contract

to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors could not become acts of the government by reason of their significant or even total engagement in performing public contracts.

The school is also analogous to the public defender found not to be a state actor in Polk County vs. Dobson, 50 USLW 4077 (1982). There we concluded that although the state paid the public defender, a relationship with her client was 'identical to that existing between anyother lawyer and client'. Id. at 4078. Here the relationship between the school and its teachers and counsellors is not changed because the state paid the tuitions of the students." Page 4828.

Again, in Randell Baker vs. Kohn, the Supreme Court considered that the absence of interest by the regulators in the personnel policies was a significant factor. As we have repeatedly stated here, personnel regulations, to the extent of converting them in public employees, for the Hatch Act purposes,has been of paramount interest to the Federal Government.

As we stated earlier, the case of Ginn vs. Mathews, 533 F2d 477 (9 Cir 1976), is applicable. There the Court ruled that:

"In any event, on the record here we find abundant evidence of significant state action which brings this case within Burton and without the parameters of Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). It is akin to McQueen v. Druker, 438 F.2d 781 (1st Cir. 1971), where the court said:

"'Mere receipt of financial subsidy and subjection to some regulation are the conditions of much of our societal life. Neither factor--or both together--is dispositive of 'state action'. But, while we disavow any effort to be definitive, we conclude that at least when a specific governmental function is carried out by heavily subsidized private firms or individuals whose freedom of decision-making has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches.' Id. at 784-85.

> "Therefore, it is our view that the complaint states a claim upon which relief may be granted on either or any of the First, Fifth, or Fourteenth Amendment claims. We express no view as to the merits of those claims."

See also Mathis vs. Opportunities Industrial Centers, Inc., 545 F2d 97 (9 Cir 1976).

In conclusion, when we consider that Puerto Rico Legal Services' funding by the Federal Government is total and that the statutory and administrative regulations govern most of the activities of the legal services agencies, specially as to those related to personnel policies, even to the extreme of prohibiting the non-partisan political activities of its staff attorneys, Smith vs. Ehrlich, supra, the existence of federal action attaches. These staff attorneys who join the employ of these legal services organizations funded by Legal Services Corporation, who lose their political rights in exchange for an employment provided with funds from the Federal Government, have the right to work and not be dismissed from their work without the protection of the Fifth Amendment. CSC vs. Letter Carriers, supra.

Here we have a symbiotic relation between the Legal Services Corporation, a federal instrumentality or at least a federal agent, and the various state and local recipients which render services at the customer level. The symbiotic relationship is perhaps the most classic of all, that of mother and child. The federal agent, Legal Services Corporation, benefits from the relationship because it could hardly carry out the purposes assigned to it by Congress unless it creates and nurtures, supervises, and monitors, and controls its offspring that are the organizations that give

services at the customer level. On the other hand, the offspring benefits from this arrangement receiving the funds and experiences from the parent. One could not exists without the other, which is the classic example of symbiotic relationship. See Rivas Tenorio vs. L.A.I., 554 F2d 492 (1 Cir 1977).

In conclusion, not only did the Federal Government extensively dictated the composition, selection, and number of meetings of the Board of Directors of the recipients, as well as their compensation, but with respect to personnel policies, the control of what they may or may not do, including their political rights, have been extensively regulated and restricted. When the employees of a private organization cannot even exercise their constitutional rights because it has been dictated as a condition of their employment, no one can deny that control and domination over the recipient is exercised. This is not the ordinary regulation that was present in Randell Baker vs. Kohn, supra.

2. Whether the District Court erred in refusing to reinstate Plaintiff-Appellant to his former job even though the jury's verdict was in Plaintiff's favor.

As part of his remedy, Plaintiff-Appellant was entitled to be reinstated, see Oppenheimer Méndez vs. Acevedo, 388 FSupp 326, affirmed 512 FSupp 1373 (1 Cir 1975). Attorney's fees should also be awarded. We respectfully request that, if the Opinion is reversed, the judgment be reinstated with an Order for the reinstatement of Plaintiff to his former position that the hearing be ordered as to determine attorney's fees.

V. CONCLUSION:

For the reasons and arguments above stated, we respectfully request that the judgment of the District Court vacating the verdict and judgment issued previously and dismissing the Complaint for lack of jurisdiction be reversed and the judgment in favor of the Plaintiff reinstated, including an Order for the reinstatement of Plaintiff and an Order that the case be remanded to the District Court for an award of attorney's fees.

San Juan, Puerto Rico, this 13th day of August, 1982.

Respectfully submitted,

A. J. Amadeo Murga
1105 Banco Popular Center
Hato Rey, Puerto Rico 00918
Tels. (809) 753-0875, 764-5436
Attorney for Plaintiff-Appellant

CERTIFICATE OF SERVICE

IT IS CERTIFIED that two (2) copies of this Brief for Plaintiff-Appellant were mailed to José E. Fernández Seín, Esq., attorney for Defendat-Appellee, P.O. Box 9949, San Juan, Puerto Rico 00908; as well as copy of Appendix, on this 13th day of August, 1982.

A. J. Amadeo Murga



Case 1:04-cv-00238-S Document 34-5 Filed 11/04/2005 Page 23 of 39

ORIGINAL

SEP 27 4 15 PM '82

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 82-1474

JULIO C. LOPEZ-GERENA
Plaintiff-Appellant,

v.

PUERTO RICO LEGAL SERVICES, INC.
Defendant-Appellee.

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
Box 25
C 2898

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

---

BRIEF FOR DEFENDANT, APPELLEE

---

JOSE E. FERNANDEZ SEIN
Attorney for Defendant, Appellee
P.O. Box 13342
Santurce, Puerto Rico 00908
Tel. (809) 724-1212

## TABLE OF CONTENTS


| Cases Cited | Page |
|---|---|
| Counterstatement of the Case ........................ | 1 |
| Counterstatement of the Facts ....................... | 3 |
| Jurisdiction ........................................ | 7 |
| Argument ............................................ | 7 |
| Conclusion .......................................... | 13 |
| Certificate of Service .............................. | 14 |


## AUTHORITIES CITED

### Cases


| | |
|---|---|
| BLUM v. YARETSKY, 50 USLW 4859 (1982) .............. | 10 |
| LEFCOURT v. LEGAL AID SOCIETY, 445 F. 2d. 1150 (2nd. Cir. 1971) ................................ | 12 |
| POLK COUNTY v. DODSON, 20 USLW 4077 (1982) ......... | 10 |
| RENDELL-BAKER v. KOHN, 641 F. 2d. 14 (1981) Affirmed June 25, 1982, 50 USLW 4825 ................ | 9 |


### Statutes


| | |
|---|---|
| 5 USC §701 .......................................... | 5 |
| 42 USC §1981 and 1983 ............................... | 5 |
| 28 USC §1331, 1361 and 1343 ......................... | 5 |
| 42 USC 2996 d(e)(1) and (f).......................... | 13 |

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 82-1474

JULIO C. LOPEZ-GERENA
Plaintiff-Appellant,

v.

PUERTO RICO LEGAL SERVICES, INC.
Defendant-Appellee.

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

---

# BRIEF FOR DEFENDANT, APPELLEE

---

JOSE E. FERNANDEZ SEIN
Attorney for Defendant, Appellee
P.O. Box 13342
Santurce, Puerto Rico, 00908
Tel. (809) 724-1212

COUNTERSTATEMENT OF THE CASE:

In April 18, 1980, plaintiff-appellant, Julio C. López-Gerena, a licensed attorney filed an action against his former employer, defendant-appellee, Puerto Rico Legal Services Corporation, Inc., seeking injunctive relief and monetary damages for violation of his constitutional rights. Jurisdiction was pleaded pursuant to 5 USC §701; 42 USC §1981 and 1983; and 28 USC §1331, 1361 and 1343. It was alleged that plaintiff-appellant was dismissed from his employment: "...in violation of the Due Process Clause of the Constitution of the United States insofar as plaintiff was dismissed without a prior hearing and in violation of the statutes and regulations applicable to all employees of Servicios Legales de Puerto Rico, Inc. (sic)..." (Complaint ¶6, Appendix pp. 1-6).

In July 2, 1980, defendant-appellee moved to dismiss the action or to have summary judgment granted in its favor arguing that the Court lacked jurisdiction over the claims raised in the complaint under any of the statutes pleaded by the plaintiff-appellant and that the complaint, as drafted, failed to state a claim upon which relief could be granted. (Supp. Appendix pp. 1-18). Plaintiff-appellant replied to said motion by arguing that jurisdiction properly lied in this case because in a prior similar action against Puerto Rico Legal Services, Inc., the late Chief Judge, José V. Toledo, from this district, had concluded that the actions of Puerto Rico Legal Services, Inc., constituted federal governmental action. (Appendix pp. 10-11).

In May 11, 1981, Judge Carmen Consuelo Cerezo denied defendant-appellee's motion, "...on the grounds expressed in this Court's opinion and order of June 16, 1977, per Honorable José V. Toledo, U.S. District Judge in the case of <u>Pedro J. Varela</u> v. <u>Jorge Segarra</u>

Olivero, Civil No. 77-749." (Appendix pp. 15-25).

A pretrial conference was held on December 9, 1981, before Judge Cerezo and a pre-trial stipulation was discussed, signed and approved by the Court. At pre-trial the parties agreed that this action was brought under 42 USC §1981 and 1983, for a dismissal in violation of the applicable rules and regulations and as a result or arbitrarian (sic) and capricious actions on the part of employees of Puerto Rico Legal Services, Inc. Plaintiff-appellant did not assert any claims for violation of the Fifth Amendment. Defendant-appellee renewed its jurisdictional challenge claiming that it was a private non-profit corporation organized under the laws of the Commonwealth of Puerto Rico and that its actions were neither state nor federal governmental actions subject to the strictures of the Fifth Amendment. (Appendix, pp. 28-39).

The case was then assigned to Judge Robert A. Grant, Senior District Judge from South Bend, Indiana, sitting by special designation.

A jury trial was commenced on January 18, 1982. Before the jury was selected defendant-appellee renewed its motion to dismiss for lack of jurisdiction and the motion was denied based on Judge Cerezo's prior ruling.

Thereafter, a trial was had and on January 20, 1980, a jury verdict was rendered in favor of plaintiff-appellant and damages were awarded to him in the aggregate amount of $65,000.00. A Judgment was entered that same day.

In February 1, 1982, the defendant-appellee filed a motion to set aside verdict, for a new trial and for remittitur. Sub-

sequently, on February 24, 1982, the defendant-appellee filed a motion to dismiss for lack of subject matter jurisdiction. Opposing counsel met with the trial judge on February 26, 1982, and plaintiff-appellant was asked to file a reply to defendant-appellee's jurisdictional challenge. Said reply was filed on March 17, 1982.

By order dated April 30, 1982, the trial judge, Honorable Robert A. Grant, vacated the judgment entered in favor of the plaintiff-appellant and dismissed the action for want of jurisdiction upon concluding that defendant-appellee's actions were neither actions of the Commonwealth of Puerto Rico, pursuant to 42 USC §1983 or the actions of the federal government. (Appendix 68-90).

COUNTERSTATEMENT OF THE FACTS:

Plaintiff-Appellant is a practicing attorney who, on January 7, 1976 became employed by the defendant-appellee, Puerto Rico Legal Services, Inc., to work as a staff attorney at the program's direct service center located in the town of Humacao, Puerto Rico. The position of staff attorney was a unionized position covered by a Collective Bargaining Agreement. On November 8, 1978, plaintiff-appellant was named to the position of deputy director of the Humacao Center, this position being a managerial position covered by a personnel regulation that had been promulgated in 1974. (Trial Exhibit I), and subject to a 6 month probationary period.

Puerto Rico Legal Services, Inc., the defendant-appellee, is a private non-profit corporation organized under the laws of the Commonwealth of Puerto Rico, prior to 1974 to provide free legal assistance in cases of civil nature and notarial services to those persons that qualify for its services. It is managed and directed by an Executive Director. Its administrative structure includes

a Board of Directors. It receives funds both from the Legislature of Puerto Rico and from the Congress of the United States. It is also empowered to receive funds from private organizations.

Effective July 15, 1979, plaintiff-appellant was separated from his employment by the Executive Director of Puerto Rico Legal Services, Inc., the stated reasons being that plaintiff-appellant had failed to approve his probationary period. The personnel regulation covering non-union, managerial employees provided for an appeal to be taken by the aggrieved party from the decision of the Executive Director to the Executive Committee of the Board of Directors.

As it appears from the complaint and the pretrial order, plaintiff-appellant charged that defendant-appellee had failed to render a timely evaluation and hence, that he had attained permanency in the position of deputy director and could not be dismissed without a prior hearing. Plaintiff-appellant further charged that he was evaluated a month after the expiration of the probationary period and that said evaluation was made in an arbitrary and capricious manner. Additionally, it was charged that under the applicable personnel regulation, plaintiff-appellant had a right to return to his prior unionized position as staff attorney if he failed his probationary period in the new position.

The facts needed to support these charges were disputed at trial. Evidence was presented to show that Mr. López Gerena had been timely evaluated by his supervisor, that he had been notified in writing, of the decision of the Executive Director and that he had failed to file a written appeal with the Executive Committee.

The personnel regulation does not provide for a right to return to a priorly held position when an employee fails to approve his probationary period.

Based on the premises that he had attained permanency in the position of deputy director and that he was dismissed without a prior hearing "in violation of the statutes and regulations applicable to all employees of Servicios Legales de Puerto Rico, Inc. (sic)," plaintiff-appellant then sought to attach jurisdiction pursuant to 5 USC §701, 42 USC §1981 and 1983; and 28 USC §1331, 1361 and 1343.

No factual allegations were made in the complaint to sustain a charge for racial discrimination under 42 USC §1981. No such charges were made either in the complaint or described in the pre-trial order as being part of plaintiff-appellant's theory.

The only jurisdictional allegations made in the complaint are contained in paragraph 1. Said paragraph reads as follows:

> "1. The plaintiff is a citizen of the United States and domiciled in the Commonwealth of Puerto Rico. The defendant is a corporation organized under the laws of the Commonwealth of Puerto Rico having its principal place of business in San Juan, Commonwealth of Puerto Rico and with offices in different parts of the Commonwealth of Puerto Rico. It is governed by a Board of Directors and its daily affairs run by its Executive Director whose name upon information and belief is Jorge Segarra Olivero. The defendant was created to administer federal funds granted by Congress for the purpose of providing legal assistance to the poor in Puerto Rico. The defendant receives said federal funds and also receives funds from the Government of Puerto Rico and other municipalities of Puerto Rico. The defendant exists solely because of the federal funds and the Commonwealth funds provided expressly by the Federal Congress and the Puerto Rican Legislature for the purspose of having a body which may give legal aid to the poor people of Puerto Rico. All its actions are, therefore, actions of the federal and state governemnt. Jurisdiction is invoked pursuant Section 701, Title 5 U.S.C. and Sections 1981 and 1983, Title 42 U.S.C. as well as Sections 1331, 1361 and 1343,

> Title 28 U.S.C. The amount in controversy excluding costs, interest and attorney's fees exceeds the sum of $10,000.00. Federal question jurisdiction is invoked to wit: the violation of the civil and constitutional rights of plaitniff specifically his rights under the due process clause of the Constitution of the United States."

No allegations were made as to any regulatory scheme between the Commonwealth government or the federal government and the defendant-appellee and no facts are given to establish such a relationship.

No allegations were made as to whether defendant-appellee was exercising a "public function" or one traditionally reserved for the government.

No allegations were made or facts asserted to sustain the existence of a "symbiotic relationship" between the defendant-appellee and the government, be it state or federal.

As noted by the trial judge, in his memorandum opinion, plaintiff-appellant did not submit any evidence at trial or made any reference in his memorandums as to these necessary allegations. Not only that, but no evidence was presented at trial as to defendant-appellee's funding, this being the only jurisdictional factual assertion made in his complaint.

Recognizing this void and probably realizing the fatality of this argument plaintiff-appellant states, at page 3 of his brief, that:

> "Because Defendant's original Motion for Lack of Jurisdiction was denied on the strength of Judge Toledo's Opinion, no hearing was held at any time for the purpose of offering evidence as to the nature of Puerto Rico Legal Services, Inc. As far as Plaintiff-Appellant is concerned, when the trial came, the jurisdictional issue had already been disposed of an the ruling of Judge Cerezo, which adopted Judge Toledo's ruling, was the law of the case.

> "Therefore, the jurisdictional facts are those which appear from Judge Toledo's Opinion and from the provisions of the federal law and regulations that govern Puerto Rico Legal Services, Inc., and its parent Legal Services Corporation."

This position is legally unsound because the essential jurisdictional facts must always be alleged and proven in any action. Suffice it to say on this point that, as will be discussed hereinafter, Judge Toledo's opinion was predicated on a finding that providing legal assistance to the poor is the policy of the federal government as embodied in the Legal Services Corporation Act of 1974, and that, since defendant-appellee was engaged in giving said legal assistance, therefore, federal governmental action was present.

<u>JURISDICTION</u>:

This Court has jurisdiction of this appeal from a final judgment of a district court under the provisions of 28 U.S.C. §1291.

<u>ARGUMENT</u>:

<u>The District Court Did Not Err In Vacating The Judgment Entered In Favor of Plaintiff-Appellant and In Dismissing the Complaint for Want of Jurisdiction and in Refusing to Order Plaintiff-Appellant's Reinstatement</u>

As previously stated, at all times during the pendency of this litigation before the District Court and even now before this Court, plaintiff-appellant has relied exclusively on Judge Toledo's Opinion and Order of June 16, 1977, (Appendix pp. 12-25) in order to meet its jurisdictional burden. The complaint, as drafted, and the plaintiff-appellant's statement of his theory and jurisdictional basis at pretrial demonstrate an obvious lack of necessary factual and legal recitals. When plaintiff-appellant's allegations were challenged by the defendant-appellee in a motion to dismiss for

lack of jurisdiction, said challenge was met with a laconic reference to Judge Toledo's opinion. No attempt was made by plaintiff-appellant to amend its pleadings. No discovery was conducted by plaintiff-appellant to inquire as to the necessary jurisdictional elements; e.g. defendant-appellee's funding, its relationship to the Commonwealth or federal government, the government's regulatory scheme over the defendant-appellee, the government's involvement in the hiring and dismissal of defendant-appellee's employees, and particularly of Mr. López-Gerena, or any such other matters. The District Court went along with Judge Toledo's opinion and denied defendant-appellee's motion on the grounds expressed by Judge Toledo, without a hearing and without receiving any evidence as to basic factual allegations. From that point on plaintiff-appellant presumably was going forward based on a jurisdictional charge that federal governmental action was present in this case, as had been Judge Toledo's ruling in the prior case, even though plaintiff-appellant had asserted jurisdiction under several statutes.

At page 2 of his memorandum of March 17, 1982, submitted to the trial judge, (Appendix 55-67), plaintiff-appellant stated that:

> "Precisely, the ruling of Judge Toledo in the Varela case was to the effect that Defendant, Puerto Rico Legal Services, Inc., is the federal agency or, at least, that its employees are to be considered federal employees, or that the action of the corporation is federal action."

It is submitted that plaintiff-appellant was indeed pursuing a claim based on federal governmental action.

In this sense, and as noted by the trial judge in his memorandum order, the statements made by plaintiff-appellant at pretrial

that this action was one; "for injunctive relief and damages filed under Section 1981 and 1983, Title 42 USC,..." and the lack of reference to a Fifth Amendment violation, or to federal governmental action and the limiting of the instructions to the jury to the question of a Section 1983 action is both revealing and inexplicable. However, plaintiff-appellant's candid statement, at page 3 of his brief, that Judge Toledo's ruling was the law of the case and that seemingly he relied on the jurisdictional facts that appear from said opinion is for all purposes a corroboration of the trial judge's statement that no evidence whatsoever was presented by plaintiff-appellant's jurisdictional allegations. The statement is also an admission that plaintiff-appellant did not present any evidence to show that the facts stated by Judge Toledo, in 1977, were the same in 1982, or to show any involvement between defendant-appellee and either the Commonwealth or the federal government concerning the hearing and dismissal of defendant-appellee's employees, particularly, Mr. Lopez-Gerena.

Regardless of whether plaintiff-appellant is pursuing a claim based on state action or federal action, the fact remains that as the trial judge concluded, based on the record and the evidence presented at trial, plaintiff-appellant failed to establish that defendant-appellee's actions in dismissing Mr. López-Gerena were the actions of the federal or the Commonwealth government.

Applying, as we must, the test applied by this Court in <u>RENDELL-BAKER</u> v. <u>KOHN</u>, 641 F. 2d. 14 (1981), affirmed on June 25, 1982, at 50 U.S. L.W. 4825, we submit that the trial judge's opinion is correct. It is not necessary for us to recite fully the facts as they were developed in <u>RENDELL</u>, <u>supra</u>, Certain facts,

however, must be noted. There this Court indicated that because of the school's funding, the government's regulatory scheme over the school and the schools' functions it had a close relationship with the State. However, a crucial element considered was that insofar as the plaintiff's discharge, it was determined that the State had relatively little involvement in the school's personnel matters and particularly in decisions involving the discharge of personnel. This Court found that the defendants there, private actors, had not acted under color of state law.

The Supreme Court affirmed this Court's decision. The issue there was narrowly framed as to whether the school's action could fairly be seen as state action. Drawing rather extensively from BLUM v. YARETSKY, decided June 25, 1982, 50 USLW 4859, where decisions regarding transfers of patients to and from certain nursing homes were claimed to be state action, the Supreme Court went on to apply the following factors which we will endeavor to apply to our case:

1. Funding. In BLUM, supra, the State subsidized the operating and capital costs of the nursing homes, and paid the medical expenses of more than 90% of the patients. Similarly, in RENDELL-BAKER, supra, public funds accounted for at least 90% of the school's operating budget, reaching at times a figure of 99%.

The Court concluded that the school's receipt of public funds did not make the discharge decision acts of the state. Cf. POLK COUNTY v. DODSON, 50 USLW 4077 (1982). In our case, plaintiff-appellant did not present any evidence as to defendant-appellee's funding by the Legal Services Corporation, although, concededly, it accounts for a considerable percentage of its funds. However,

defendant-appellee does not exist solely because of the Legal Services Corporation. It existed prior to 1974.

2. Regulations. In BLUM, supra, the Court found that the nursing homes were extensively regulated by the State. In fact, the State was indirectly involved in the transfer decisions because it helped keep the costs of the program down. The Court held that state regulation, even if extensive and detailed, did not make a private actor's actions state action. in RENDELL-BAKER, supra, the Court found that, even though a government Committee on Criminal Justice had the power to approve persons hired by defendant, such a regulation was not sufficient to make a decision to discharge by a private actor, state action. In our case no evidence was presented to show any regulation by the federal government of defendant-appellee's hiring or discharge procedures. In fact, as trial Exhibit I shows the personnel regulation prepared and promulgated by defendant-appellee for its non-unionized personnel had existed since 1974. No evidence was presented to show any state or federal involvement in Mr. Lopez-Gerena's discharge.

3. Public Functions. In RENDELL-BAKER, supra, the Court stated that the question here is not whether a private group is serving a "public function" but whether the function performed has been traditionally the exclusive prerrogative of the State. Although the Court agreed that education of maladjusted high school students is a public function, it found that these services were not the exclusive province of the State. This is the crux of the problem, insofar as Judge Toledo's opinion, because there it was found that giving legal assistance to the poor is a federal governmental function. With all due respect we disagree. As the trial judge

correctly pointed out: "Providing legal services to the poor, especially in non-criminal cases, has traditionally been performed by private attorneys through local, state and national Bar programs." accord, LEFCOURT v. LEGAL AID SOCIETY, 445 F. 2d. 1150 (2d. Cir., 1971), POLK COUNTY v. DODSON, supra.

4. "Symbiotic Relationship" test. In RENDELL-BAKER, supra, the Court found that the school's relationship with the State was not different from that of many contractors performing services for the government and that no symbiotic relationship existed. In our situation, the existence of such a relationship is an impossibility. Both by its legal mandate and by its operations, the legal services organizations must have freedom of action to operate independent of the government, precisely because in many, if not most of its cases, the government, be it state or federal, figures as the defendant. Legal Services organizations have traditionally acted as watch-dogs in areas such as welfare programs, public housing, prisoners' rights and conditions of confinement, social security and others.

Plaintiff-appellant states in his brief that RENDELL-BAKER, supra, is very distinguishable from the facts of the present case. We agree in the sense that there the Court was faced with a stronger case for a finding of state action mainly because of the functions involved. But, we submit that this decision is controlling.

Plaintiff-appellant argues that the Legal Services Corporation is an instrumentality or that its activities are those of the federal government or that it acts under color of federal law. No cases are cited for this unqualified proposition. Indeed, by statutory disposition, such a conclusion is unwarranted since sections

2996 d(e)(1) and (f) of the Legal Services Corporation Act of 1974, 42 USC, provides that:

> "(e)(1) Except as otherwise specifically provided in this subchapter, officers and employees of the Corporation shall not be considered officers or employees, and the Corporation shall not be considered a department, agency, or instrumentality, of the Federal Government.
>
> "(2)....
>
> "(f) Officers and employees of the Corporation shall be considered officers and employees of the Federal Goverment for purposes of the following provisions of Title 5: subchapter I of chapter 81 (relating to compensation for work injuries); chapter 83 (relating to civil service retirement); chapter 87 (relating to life insurance); and chapter 89 (relating to health insurance). The Corporation shall make contributions at the same rates applicable to agencies of the Federal Government under the provisions referred to in this subsection."

Even assuming that the Legal Services Corporation can be treated as a federal agency or instrumentality, the fact remains that under RENDELL-BAKER, supra, Puerto Rico Legal Services, Inc. cannot be held as the former's agent or alter ego and its actions taken in dismissing Mr. López-Gerena cannot be treated as federal action.

## CONCLUSION

The Judgment below, dismissing the complaint should be affirmed.

In Santurce, Puerto Rico, September 23, 1982.

Respectfully Submitted,

JOSE E. FERNANDEZ-SEIN
Attorney for Defendant-Appellee
P.O. Box 13342
Santurce, Puerto Rico 00908
(809) 724-1212

CERTIFICATE OF SERVICE

IT IS CERTIFIED that two copies of this brief and two copies of the supplemental appendix for defendant-appellee were mailed to A.J. Amadeo Murga, Esq., 1105 Banco Popular Center, Hato Rey, Puerto Rico, 00918.

At Santurce, Puerto Rico, September 24, 1982.

José E. Fernández Seín